# UNITED STATES DISTRICT COURT
# EASTERN DISTRICT OF WISCONSIN

---

**DANNY HUGHES and**
**CHARLENE JACKSON,**
        **Plaintiffs,**

    v.                                                       Case No. 20-C-1377

**JAMES MILLER, FELICIA MILLER,**
**MILLER & MILLER LAW LLC,**
**PAULA BRENNER, JOHN SCAFFIDI,**
**DOUGLAS MANN, MARGARET**
**McGARITY, and JOHN DOES,**
        **Defendants.**

---

## DECISION AND ORDER

      For several years now, Danny Hughes and Charlene Jackson, proceeding pro se, have been waging a legal crusade against various participants in Hughes's Chapter 7 bankruptcy. In addition to the bankruptcy proceedings and related appeals, Hughes and Jackson have collectively filed three federal and three state cases involving the bankruptcy. The main targets of these suits have been Hughes's bankruptcy lawyers (attorneys at Miller and Miller Law, LLC), the private bankruptcy trustee assigned to his case (John Scaffidi), and the trustee's lawyer (Douglas Mann). Hughes and Jackson contend that the bankruptcy lawyers committed malpractice, and that the trustee and his counsel somehow violated the law by successfully prosecuting an adversary action in which the bankruptcy court ordered Hughes, Jackson, and others to turn over a tract of land and two dozen vehicles to the bankruptcy estate.

      The courts have uniformly rejected each of Hughes's and Jackson's suits at the pleading stage. However, after each suit is dismissed, Hughes and/or Jackson file a

related suit alleging the same or nearly the same claims against the same or nearly the same defendants. The present action is Hughes's and Jackson's latest suit. The defendants include three lawyers from the Miller firm, the trustee, and the trustee's lawyer. They also sue the bankruptcy judge who presided over the bankruptcy case, Margaret McGarity, and they seek to amend their complaint to add other participants in the bankruptcy case as defendants. As discussed below, this court lacks subject matter jurisdiction over the plaintiffs' claims, and the suit will be dismissed for that reason. However, because the plaintiffs continue to file frivolous suits involving the bankruptcy, I will make the dismissal with prejudice and enjoin the plaintiffs from commencing new lawsuits against any participant in the bankruptcy case.

## I. BACKGROUND

In November 2014, Hughes retained the Miller firm to prepare and file a bankruptcy case, and Attorney Paula Brunner[1] began preparing the petition. Compl. ¶ 20. On April 14, 2015, Brunner filed a Chapter 7 petition on Hughes's behalf. *See* Docket of E.D. Wis. Bankr. Case No. 15-23793.[2] The Office of the United States Trustee appointed Attorney John M. Scaffidi, a member of the panel of private trustees, to serve as the trustee for the case. As the bankruptcy progressed, Scaffidi discovered a series of suspicious transactions involving dozens of collectable vehicles and land in Germantown, Wisconsin. *See* ECF No. 12 (bankruptcy case). Scaffidi believed that the land and vehicles might be

---

[1] The complaint identifies the attorney as Paula "Brenner," but the record of the bankruptcy case shows that she spells her name "Brunner."

[2] I take judicial notice of the records of the bankruptcy court and of the other courts involved in Hughes's and Jackson's suits. *See Ennenga v. Starns*, 677 F.3d 766, 773–74 (7th Cir. 2012) (court may take judicial notice of public court dockets).

property of the bankruptcy estate, and he asked the court for permission to hire Attorney Douglas Mann to assist him in investigating these matters. *See id.* Judge McGarity granted Scaffidi's request to employ Mann for this purpose. *See* ECF No. 17 (bankruptcy case).

Eventually, the trustee, through Mann, filed an adversary complaint against Hughes, Jackson (who is Hughes's ex-wife), and Hughes's two sons, seeking an order requiring them to turn over assets to the bankruptcy estate. *See* E.D. Wis. Bankr. Case No. 15-02389 (adversary case). The assets included a 10-acre parcel of real estate in Germantown, Wisconsin, on which stood a pole barn, and thirty collectable vehicles. Title to the real estate was in Jackson's name, and title to some of the vehicles may have been in the name of Hughes's sons. The trustee alleged that Hughes was the true owner of the assets and that any transfers of title to Jackson and Hughes's sons were fraudulent.

At around this time, attorneys from the Miller firm moved to withdraw as Hughes's counsel. They stated that their fee agreement with Hughes limited their engagement to preparing and filing a basic bankruptcy case, and that because the bankruptcy had become complex, they could no longer represent Hughes. They also noted that Hughes had questioned the firm's decisions and that Hughes and his lawyers had irreconcilable differences. *See* ECF No. 76 (bankruptcy case). The bankruptcy court granted the motion to withdraw on October 9, 2015. *See* ECF No. 120 (bankruptcy case).

The bankruptcy court held an evidentiary hearing on the adversary complaint in November 2015, at which Hughes, Jackson, and Hughes's sons testified. *See* ECF No. 36 (adversary case). After the hearing, the bankruptcy court, through Judge McGarity, voided the transfers of the land and vehicles to Jackson and to Hughes's sons and

3

deemed them property of the bankruptcy estate. On January 8, 2016, the court ordered the parties to turn title to the assets over to the trustee and warned that it would seek assistance from the U.S. Marshals service, if necessary, to implement the order. *See* ECF No. 52 (adversary case). In Spring 2016, the trustee sold the vehicles and land at an auction authorized by the bankruptcy court. *See* ECF Nos. 270, 339 & 347 (bankruptcy case).

On May 4, 2016, Hughes filed a pro se complaint in this court against attorneys with the Miller firm. *See* E.D. Wis. Case No. 16-C-0541. The complaint sought either the return of the land and vehicles sold during the bankruptcy case or $850,000 in damages. The court construed the complaint as alleging claims for breach of contract and/or legal malpractice. Because such claims arose under state law and the parties were not completely diverse, the court dismissed the complaint for lack of subject-matter jurisdiction. The court entered the order dismissing the complaint on May 5, 2016, and judgment was entered on June 6, 2016.

On May 16, 2016, Hughes filed a pro se complaint in the circuit court for Milwaukee County, Wisconsin, against James Miller, Paula Brunner, and the Office of the United States Trustee. *See* Milwaukee County Cir. Ct. Case No. 16cv3727. The complaint purported to allege claims for breach of contract and legal malpractice against Miller and Brunner, and it contained no allegations concerning the Office of the United States Trustee. *See* Aff. of Luke Behnke Ex. A. Because the complaint purported to state a claim against an agency of the United States (the Trustee's Office), the United States removed the case to this court, where it was assigned to me. I determined that the plaintiff's claim against the Trustee's Office did not fall within a waiver of the United States' sovereign

4

immunity and dismissed that agency from the case. I then remanded the state-law claims against Miller and Brunner to the Milwaukee County court. A judgment to that effect was entered on January 25, 2017. When the case returned to state court, Miller and Brunner filed a motion to dismiss the claims against them on the merits. The circuit court granted that motion and dismissed the case with prejudice in an order dated June 26, 2017. *See* Behnke Aff. Ex. E.

On December 18, 2019, Charlene Jackson filed a pro se complaint in this court against Judge McGarity, Douglas Mann, and the State of Wisconsin. *See* E.D. Wis. Case No. 19-C-1858. She alleged that the bankruptcy court's order requiring her to turn the land and vehicles over to the bankruptcy estate violated her constitutional rights and amounted to civil theft under state law. She sought the return of the land and vehicles or their replacement value. On January 14, 2020, this court, through Judge J.P. Stadtmueller, issued an order dismissing the case for failure to state a claim on which relief may be granted. The court reasoned that Jackson's claims amounted to a collateral attack on the bankruptcy court's order that had to be rejected under the doctrine of claim preclusion (also known as *res judicata*).

On January 24, 2020, only a few days after the dismissal of Jackson's federal complaint, both she and Hughes commenced separate pro se cases in the Milwaukee County circuit court against Miller, Brunner, and a third attorney with the Miller firm, Felicia Miller. *See* Milwaukee County Cir. Ct. Case Nos. 20cv653 & 20cv654. The complaints again challenged the outcome of the adversary proceeding in Hughes's bankruptcy and purported to allege claims for negligence and negligent infliction of emotional distress. *See* Behnke Aff. Exs. F & G. In each case, the defendants filed a motion to dismiss, and

5

the judge assigned to each case entered an order dismissing it on the merits. *See id.* Exs. H & I. The dismissal orders were entered in July and August of 2020.

Finally, on September 4, 2020, Hughes and Jackson filed their pro se complaint in the present action. As noted, they sue the Miller firm, three of its attorneys, the bankruptcy trustee, the trustee's lawyer, and the bankruptcy judge.[3] Once again, Hughes and Jackson challenge the outcome of the adversary proceeding and seek compensation for the land and vehicles that were sold during the administration of Hughes's bankruptcy case. The complaint purports to allege claims for "civil conspiracy, gross negligence, negligent supervision, and negligent infliction of emotional distress." Compl. ¶ 2. The complaint's factual allegations mostly summarize the events that occurred in the bankruptcy court and accuse the Miller attorneys of making various mistakes. The complaint's allegations against the trustee and his lawyer are sparse, but it appears that the plaintiffs accuse Scaffidi and Mann of having acted improperly when they offered to settle the adversary proceeding for either $10,000 or two of the collectable vehicles. *Id.* ¶ 84. As for Judge McGarity, the complaint alleges that she erroneously refused to allow Hughes to convert his Chapter 7 case to a Chapter 13 case. *Id.* ¶ 85. Finally, the complaint includes the conclusory assertion that the Miller attorneys, Scaffidi, Mann, and Judge McGarity all conspired with one another "to deprive [Hughes and Jackson] of the[ir] personal belongings for a personal financial gain." *Id.* ¶ 86.

Several matters are before the court. The defendants other than Judge McGarity have filed motions to dismiss the complaint on various grounds. The plaintiffs did not

---

[3] The plaintiffs have also listed John Does as both plaintiffs and defendants. It is not clear what purpose these Doe parties are intended to serve, and therefore I will disregard them.

serve Judge McGarity with the summons and complaint before the time for them to do so expired, *see* Fed. R. Civ. P. 4(m), and so she has not responded to the complaint. But the plaintiffs have asked for additional time to serve Judge McGarity. *See* ECF No. 27. The plaintiffs have also requested leave to amend their complaint to allege claims against "Attorney Marie Springer for Richard Paetz." ECF No. 29 at 5. It appears that Paetz was one of Hughes's creditors and that Attorney Springer represented him in the bankruptcy. The plaintiffs indicate that they want to bring claims against Springer for filing a fraudulent claim in the bankruptcy.

As explained below, the court does not have subject-matter jurisdiction over the claims alleged in the complaint, but in any event those claims are either frivolous or clearly barred by *res judicata*. Although dismissals for lack of subject-matter jurisdiction are ordinarily without prejudice, I will dismiss this case with prejudice as a sanction for bringing a frivolous case. Moreover, to prevent the plaintiffs from filing additional frivolous suits, I will enjoin them from commencing new actions against any of the participants in Hughes's bankruptcy case. Finally, I will deny the plaintiffs' request to amend their complaint to add new parties and their request for additional time to serve Judge McGarity.

## II. DISCUSSION

A federal court is a court of limited jurisdiction, meaning that it possesses only the power authorized by the Constitution and by statute. *Kokkonen v. Guardian Life Ins. Co. of N. Am.*, 511 U.S. 375, 377 (1994). In general, two statutes grant a federal district court original jurisdiction over a civil case: (1) 28 U.S.C. § 1331, which applies to cases "arising under" the Constitution, laws, or treaties of the United States, and (2) 28 U.S.C. § 1332,

7

which applies to civil cases in which the parties are completely diverse—which usually means that no plaintiff is a citizen of the same state as any defendant—and the amount in controversy exceeds $75,000. Further, if a federal court has subject-matter jurisdiction over one or more claims in a case, then in certain circumstances the court may exercise supplemental jurisdiction over state-law claims that are so related to the initial claim as to form part of the same case or controversy. *See* 28 U.S.C. § 1367.

The plaintiffs' claims do not fall within the scope of these statutes. Section 1332 is clearly inapplicable because the parties are not completely diverse—Hughes and Jackson are citizens of the same state, Wisconsin, as all the defendants except Paula Brunner, who appears to be a citizen of Colorado. Further, I can identify no claim in the complaint that arises under federal law. To the extent the plaintiffs are asserting claims for breach of contract or professional negligence against the Miller firm and its attorneys, such claims would arise under state law. Although it is difficult to identify any potentially viable claims against Scaffidi and Mann, the plaintiffs appear to be alleging a claim for civil conspiracy, which again would arise exclusively under state tort law.[4] In one of their briefs, the plaintiffs allege that Scaffidi and Mann violated the Fourth Amendment when they caused their property to be transferred to the sheriff for auction, *see* ECF No. 16 at 3, but any Fourth Amendment claim would be frivolous. Even assuming that Scaffidi and Mann could be treated as federal officials who are subject to the Fourth Amendment, the auction could not have violated the Fourth Amendment because it was conducted pursuant to a court order. *See Sodal v. Cook County, Ill.*, 506 U.S. 56, 71 (1992). A federal

---

[4] The complaint does not allege facts suggesting that this case arises under any federal statute creating a cause of action for conspiracy, such as 42 U.S.C. § 1985(3).

court does not have jurisdiction over frivolous federal claims. *See, e.g., Greater Chicago Combine and Center, Inc. v. City of Chicago*, 431 F.3d 1065, 1069–70 (7th Cir. 2005). Thus, even if this Fourth Amendment allegation had been made in the complaint, it would not confer federal-question jurisdiction.

The nature of the plaintiffs' claims against Judge McGarity is unclear, but it appears that they allege she was part of a civil conspiracy with the other defendants. Again, such a civil-conspiracy claim would arise exclusively under state law. However, it is possible to construe the claim against McGarity as being against the United States and thus as falling within the grant of federal jurisdiction conferred by the Federal Tort Claims Act. *See* 28 U.S.C. § 1346(b). If that were the case, then perhaps the plaintiffs' claims against the remaining defendants could be thought to be within the court's supplemental jurisdiction. However, the plaintiffs did not serve Judge McGarity with the summons and complaint until February 13, 2021. *See* ECF No. 35. Because the plaintiffs were required to serve all defendants within 90 days after filing the complaint, that is, by December 3, 2020, I may dismiss the claims against Judge McGarity without prejudice unless the plaintiffs show good cause for their failure to serve her within the prescribed time. *See* Fed. R. Civ. P. 4(m). The plaintiffs have not shown good cause; instead, in seeking an extension of time to complete service, they merely note that Judge McGarity did not waive service. *See* ECF No. 27. Moreover, any claim against Judge McGarity would be frivolous because (a) nothing in the complaint even remotely suggests that she conspired with the other parties, and (b) she has absolute immunity for acts taken in her judicial capacity. *See, e.g., Myrick v. Greenwood*, 856 F.3d 487, 488 (7th Cir. 2017). Therefore, I will not extend the time to serve Judge McGarity and will dismiss the claims against her for lack

9

of timely service. Because the claims against Judge McGarrity have been dismissed, I would not use such claims as a basis for exercising supplemental jurisdiction over the plaintiffs' claims against the other defendants, even if I were permitted to do so. *See* 28 U.S.C. § 1367(c)(3) (district court may decline to exercise supplemental jurisdiction over claim if it has dismissed all claims over which it had original jurisdiction). Accordingly, the claims against the remaining defendants will be dismissed for lack of subject-matter jurisdiction.[5]

Ordinarily, a dismissal for lack of subject-matter jurisdiction is without prejudice. *See El v. AmeriCredit Fin. Servs., Inc.*, 710 F.3d 748, 751 (7th Cir. 2013). However, "if the reason there's no federal jurisdiction is the plaintiff's having predicated jurisdiction on a frivolous federal claim, dismissal with prejudice is appropriate, for such a suit will go nowhere in any court." *Id.* (citation omitted). Relatedly, a district court may dismiss a case over which it lacks jurisdiction with prejudice as a sanction for misconduct or because the suit is intended to harass. *See id.*; *Georgakis v. Ill. State Univ.*, 722 F.3d 1075, 1078 (7th Cir. 2013). In the present case, I find that the dismissal of this case should be with prejudice because the plaintiffs have presented only frivolous claims and, as evidenced by the plaintiffs' history of bringing frivolous suits against the defendants, are engaged in a campaign of harassment.

Aside from the jurisdictional defects discussed above, this suit is frivolous for several reasons. First, all claims by Hughes and Jackson against the Miller firm and its

---

[5] Because I am dismissing this suit for lack of jurisdiction, I will not grant the plaintiffs' request to file an amended complaint adding "Attorney Marie Springer for Richard Paetz" as a defendant. ECF No. 29 at 5.

attorneys are barred by claim preclusion/*res judicata*. The Milwaukee County court has rendered two judgments on the merits of Hughes's claims against the Miller attorneys and one judgment on the merits of Jackson's claims against the Miller attorneys. Under Wisconsin law, these judgments preclude the plaintiffs from bringing further actions against the firm and its attorneys "as to all matters which were litigated or which might have been litigated in the former proceedings." *Lindas v. Cady*, 183 Wis. 2d 547, 558 (1994). There is no doubt that the plaintiffs either have or could have presented all the claims they now assert against the Miller firm and its attorneys in their prior suits in Milwaukee County. Thus, the claims in the present suit are clearly barred by *res judicata*, and the plaintiffs' attempts to include them in this suit are frivolous and intended to harass.

Second, the claims against Scaffidi and Mann are frivolous for multiple reasons. First, under what is known as the *Barton* doctrine, a plaintiff generally may not sue a private trustee or the trustee's attorney without first obtaining leave of the bankruptcy court, which the plaintiffs have not sought or obtained. *See Barton v. Barbour*, 104 U.S. 126 (1881); *Matter of Linton*, 136 F.3d 544, 545 (7th Cir. 1998); 1 Collier on Bankruptcy § 10.01. Second, the trustee and his attorney will generally have derivative quasi-judicial immunity from suit for actions taken during the bankruptcy case. *See Henry v. Farmer City State Bank*, 808 F.2d 1228, 1238 (7th Cir.1986) (officials performing "ministerial acts" under the supervision of judges entitled to quasi-judicial immunity); *Bennett v. Williams*, 892 F.2d 822, 823 (9th Cir.1989) ("Bankruptcy trustees are entitled to broad immunity from suit when acting within the scope of their authority and pursuant to court order."); *Yardkin Valley Bank & Trust Co. v. McGee*, 819 F.2d 74, 76 (4th Cir.1987) (bankruptcy trustee immune if acts "under the direct orders of the court"); *Boullion v. McClanahan*,

11

639 F.2d 213, 214 (5th Cir.1981) (bankruptcy trustee acted as arm of the court and thus was entitled to absolute immunity); *see also Schultz v. Dubois*, 47 F.3d 1173, 1995 WL 66780 (7th Cir. 1995) (unpublished disposition). And even if Scaffidi and Mann were not immune and could be sued in this court, the claim against them would clearly fail on the merits. The plaintiffs allege no more than that Scaffidi and Mann carried out their duties in the bankruptcy case. They filed an adversary case based on probable cause to believe that the land and vehicles were property of the bankruptcy estate, attempted to settle the case, and then prevailed on their claim after a full evidentiary hearing and executed the judgment. All these actions were clearly lawful, and the only explanation for this suit is that the plaintiffs disagree with the outcome of the adversary case and wish to harass the trustee and his counsel for carrying out their duties.

Finally, I reiterate that the plaintiffs' claims against Judge McGarity are frivolous. The plaintiffs simply allege that she made rulings during the bankruptcy case with which they disagree. Judge McGarity has judicial immunity from suit based on her rulings in the case, and therefore any suit based on those ruling would be frivolous. Further, although the plaintiffs assert that Judge McGarrity conspired with the litigants and their attorneys, this is merely a conclusory assertion that the plaintiffs do not support with concrete factual allegations. *See Cooney v. Rossiter*, 583 F.3d 967, 970 (7th Cir. 2009) (noting that "a bare allegation of conspiracy" is not enough to state a claim).

Accordingly, I conclude that a dismissal with prejudice is necessary. However, I do not think that this is a sufficient sanction. The plaintiffs' history of litigation shows that they do not view adverse judgments as obstacles to continued litigation. The plaintiffs had their day in court during the bankruptcy case, when the bankruptcy court held an evidentiary

hearing on the trustee's adversary complaint involving the land and vehicles. This should have been the end of any litigation involving the bankruptcy judge, the trustee, and the trustee's attorney (aside from any direct appeals of the judgment in the adversary case). However, Hughes attempted to sue the Office of the United States Trustee in his first state-court suit, and Jackson attempted to sue Judge McGarity and Mann in her first federal suit. After these suits were dismissed, the plaintiffs brought claims against McGarity, Scaffidi, and Mann in the current suit.

Further, assuming that Hughes had a nonfrivolous claim for either breach of contract or malpractice against the Miller firm, he had his day in court on that claim when he filed his first suit in Milwaukee County. That should have been the end of any litigation involving the Miller firm and its attorneys, aside from any direct appeals of the judgment in the first Milwaukee County case. But Hughes then filed a second state-court suit against the firm, and, when that was dismissed, he filed the present suit. The present suit is actually Hughes's second federal suit against the Miller firm; his first, filed in May 2016, was dismissed for lack of subject-matter jurisdiction. So, prior to commencing this action, Hughes knew that this court did not have jurisdiction to entertain his frivolous claims against the firm yet decided to file them here anyway. All told, Hughes has brought four lawsuits involving the Miller firm. Charlene Jackson did not retain the Miller firm and thus never had a nonfrivolous claim against it or its attorneys. She never should have filed any suit against the firm, but she certainly should have ceased litigating once the Milwaukee County court dismissed her first suit on the merits. Undeterred by the adverse judgment, Jackson brought additional claims against the firm in the present suit.

13

Clearly, the preclusive effect of judgments has not stopped the plaintiffs from filing additional suits, and something must be done to prevent the plaintiffs' from continuing to harass the defendants and burden the state and federal courts with more frivolous litigation. *See In re City of Chicago*, 500 F.3d 582, 585 (7th Cir. 2007) ("The due process clause entitles every litigant to a full and fair opportunity to be heard; it does not entitle anyone to be heard on the same question over and over."). I will therefore enjoin the plaintiffs from commencing any additional suits in any court—state or federal—against any of the current defendants or any other person or entity who participated in Hughes's Chapter 7 bankruptcy. A federal court has authority to issue such an injunction when there is a danger that the preclusive effect of a federal judgment will be insufficient to prevent further litigation. *See* 28 U.S.C. § 2283; *Chambers v. NASCO, Inc.*, 501 U.S. 32, 43–46 (1991); *Carr v. Tillery*, 591 F.3d 909, 919 (7th Cir. 2010); *Mirfasihi v. Fleet Mortg. Corp.*, 356 F.3d 781, 782 (7th Cir. 2004); *Riccard v. Prudential Ins. Co.*, 307 F.3d 1277, 1295 (11th Cir. 2002); *Sassower v. American Bar Ass'n*, 33 F.3d 733, 734–36 (7th Cir. 1994); *see also Union Oil Co. of Cal. v. Leavell*, 6 F. App'x 382 (7th Cir. 2001) (unpublished).

I have considered imposing a sanction that is less drastic than an anti-suit injunction. However, on reflection, I think that such an injunction is the mildest sanction available. Because Hughes and Jackson no longer have any legitimate claims to pursue with respect to the bankruptcy, this injunction does them no harm—even in the absence of an injunction, the plaintiffs would have no business filing additional cases involving the bankruptcy. The injunction is thus less drastic than a simple monetary sanction. In any event, given the persistence the plaintiffs have demonstrated, I doubt that a monetary sanction would deter them from filing additional suits. An injunction brings the plaintiffs'

14

crusade to an immediate end and spares the defendants and a future court from having to go through this exercise again.

The plaintiffs are advised that, should they violate the injunction by filing a new case involving the defendants or anyone else associated with the bankruptcy, they will be found in contempt. A finding of contempt will carry severe sanctions, which may include large monetary penalties and/or imprisonment. The plaintiffs are also warned that any attempt to evade the scope of the injunction—such as by bringing suit against a John Doe defendant when it is clear that the target of the suit is one of the bankruptcy participants—will also result in a finding of contempt and the imposition of sanctions. The defendants should bring any violations of the injunction to my attention as soon as they are discovered.

Before concluding, I note that the injunction does not apply to an appeal from this order or the judgment to follow. However, the plaintiffs are advised that, if they appeal, and if the appeal is found to be frivolous, they may be subject to additional sanctions for filing a frivolous appeal. *See, e.g.,* Fed. R. App. P. 38.

### III. CONCLUSION

For the reasons stated, **IT IS ORDERED** that the complaint and this action are **DISMISSED WITH PREJUDICE** both for lack of subject matter jurisdiction and because the action is frivolous. The claims against Judge McGarity are also dismissed for failure to timely serve her with the summons and complaint.

**IT IS FURTHER ORDERED** that the plaintiffs' motion for an extension of time (ECF No. 27) is **DENIED**.

**IT IS FURTHER ORDERED** that the plaintiffs' request to amend their complaint to allege claims against "Attorney Marie Springer for Richard Paetz" (ECF No. 29 at 5) is **DENIED**.

**IT IS FURTHER ORDERED** that the defendants' motions to dismiss the complaint (ECF Nos. 5, 18 & 21) are **GRANTED** to the extent that the complaint is dismissed for the reasons given in this order.

**FINALLY, IT IS ORDERED** that the plaintiffs, Danny Hughes and Charlene Jackson, are hereby **ENJOINED** from commencing an action in any state or federal court in the United States alleging claims that are related to the Chapter 7 bankruptcy of Danny Hughes, which was docketed as Eastern District of Wisconsin Bankruptcy Case No. 15-23793 and Adversary Case Nos. 15-2388 and 15-2389. For purposes of clarity, it is noted that this injunction applies to—but is not limited to—litigation involving any of the following individuals and entities: James Miller, Felicia Miller, Paula Brunner (including any alternative spelling, such as "Brenner"), Miller and Miller Law LLC, any other attorney that was at any time affiliated with Miller and Miller Law LLC, John Scaffidi, Douglas Mann, and Margaret McGarity.

Dated at Milwaukee, Wisconsin, this 24th day of February, 2021.

s/Lynn Adelman_____
LYNN ADELMAN
United States District Judge